UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL ESCALANTE,<br><br>                                    Petitioner,<br><br>v.<br><br>JEFFREY BEARD, Secretary, et al.,<br><br>                                    Respondents. | Case No.:  3:15-cv-02514-JAH-NLS<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(Dkt. No. 9) |

Before the Court is Respondent Jeffrey Beard, Secretary of the California Department of Corrections and Rehabilitation's ("Respondent") Motion to Dismiss Petitioner Angel Escalante's ("Escalante") Petition for Writ of Habeas Corpus as Untimely Filed.  (Dkt. No. 9.)  Escalante did not file an opposition to Respondent's motion, and the Court thereafter took the matter under submission.  For the reasons set forth below, the Court **RECOMMENDS** that Respondent's Motion to Dismiss the Petition as untimely filed be **GRANTED** and the Petition be **DISMISSED**.

**I.    Background**

The facts of the underlying offenses are not material to determining the motion to dismiss, and so they are not recounted here.  A recounting of the facts is contained in the

California Court of Appeal's opinion. (Lodg. 6.)

### a. The Conviction

In 2001, a jury convicted Escalante of first degree murder, and found the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. (Lodg. 6.) The jury also found a principal in the crime intentionally discharged a firearm causing death. (Id.; Lodg. 2 at 543.) The trial court sentenced Escalante to 50 years to life in state prison.

### b. The Direct Appeal

Escalante filed a direct appeal to the California Court of Appeal. On April 9, 2003, the Court of Appeal issued an opinion affirming the judgment of the Superior Court. (Lodg. 6.) The Court of Appeal rejected Escalante's claims that there was insufficient evidence to support the felony murder conviction, the criminal street gang allegation, and the firearm use enhancement, and rejected his claims that the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel. (Id.) Escalante did not file a petition for review in the California Supreme Court. (Lodg. 7.)

### c. State Proceedings

#### i. Escalante Seeks to Obtain Trial Files From His Retained Counsel

On February 16, 2012, Escalante constructively filed in the San Diego Superior Court an application for an order directing his counsel, Mr. Lawrence Harrison ("Harrison"), to provide him with all files and records pertaining to his case. (Lodg. 8.) In support of his request, Escalante submitted a declaration stating that he and his parents hired Harrison to represent him to file a petition for review and collateral proceedings. He stated that from 2005 through 2010, Harrison moved around and was difficult to contact, and Escalante's parents last spoke with him in 2010. He states Harrison took his family's money, took the case files, and failed to provide him any legal representation. (Id.) Escalante also attached exhibits he obtained to show Harrison had a history of being disciplined and was deemed not eligible to practice law in 2010 and 2011. (Id.) On March 9, 2012, the court denied Escalante's application on the ground it did not have

authority to order Harrison to release the files because the underlying criminal case was final. The court also stated Harrison never appeared as counsel in the case, and so the court never had jurisdiction over Harrison. (Lodg. 9.)

### ii. Escalante Seeks Reductions in Restitution Fines

On or about April 23, 2012, Escalante constructively filed a writ of mandate in the Court of Appeal challenging the trial court's imposition of restitution fines in his criminal trial. (Lodg. 11.) He requested the Court of Appeal reduce the amount of restitution fines. (Id.) The Court of Appeal denied the writ of mandate on May 2, 2012. (Lodg. 12.)

On May 25, 2012, Escalante constructively filed in the California Supreme Court a petition for writ of habeas corpus to again challenge the imposition of restitution fines. (Lodg. 13.) He stated he did not file the petition sooner due to his appellate counsel failing to return his case files. (Lodg. 13.) The California Supreme Court summarily denied the petition on August 29, 2012, with citations to *In re Robbins*, 18 Cal. 4th 770, 780 (1998) and *In re Dixon*, 41 Cal. 2d 756, 759 (1953). (Lodg. 14.)

### iii. Escalante Files State Habeas Petitions

#### 1. State Habeas Petition for Relief from Default to File Petition for Review

On January 4, 2015, Escalante constructively filed a petition for writ of habeas corpus in the California Supreme Court seeking relief from default in timely filing his petition for review of the Court of Appeal's 2003 decision challenging his conviction. (Lodg. 15.) He argued that two weeks after the Court of Appeal issued its decision, he and his parents retained Harrison, who had promised to file his petition but had not done so. He asked the court to provide relief from default because the delay was due to Harrison's failure to advance his appeal despite his promises to do so over a period of years, and Escalante had reasonably relied on those promises that were not kept. (Id.) He included a proposed petition for review to be filed in the California Supreme Court, wherein he included claims of insufficient evidence to support the conviction, and that

the trial court erred by denying his motion for a new trial. (Id.) On April 1, 2015, the court summarily denied the petitions, citing to *In re Robbins*, 18 Cal. 4th 770, 780 (1998); *In re Waltreus*, 62 Cal. 2d 218, 225 (1965); and *In re Lindley*, 29 Cal. 2d 709, 723 (1947). (Lodg. 16.)

## 2. State Habeas Petitions Challenging His Conviction Based on a Then-Recent California Supreme Court Ruling

While the petition for relief from default was pending, Escalante constructively filed a habeas petition in the San Diego Superior Court on January 27, 2015. (Lodg. 17.) He argued that based on the California Supreme Court's recent ruling in *People v. Chiu*, 59 Cal. 4th 155 (2014), the state court erred in instructing the jury that it could convict him under the "natural and probable consequences doctrine" and that this violated the U.S. Constitution. (Id.) Escalante asserted that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequence doctrine. (Id.)

On February 25, 2015, the Superior Court denied Escalante's petition on the ground that *People v. Chiu* was inapplicable to his case because none of the instructions given in his case set forth, explained, or relied on the natural and probable consequences doctrine. (Lodg. 18.) The court explained that Escalante was convicted based on "direct aiding and abetting principles," and further, that there was "no evidence the jury's decision to convict him of first degree murder was based on a theory that murder is a natural and probable consequence of attempted robbery." (Id.) Thus, even if *Chiu* had been the law at the time of his conviction, it would not have mandated reversal. (Id.)

On April 5, 2015, Escalante next constructively filed his habeas corpus petition in the Court of Appeal. (Lodg. 19.) He argued that the trial court erroneously instructed the jury it could find him guilty of first degree murder as an aider and abettor under the natural and probable consequences doctrine. He argued that under *Chiu*, an aider and abettor cannot be convicted of first degree premeditated murder under that doctrine. (Id.)

On April 13, 2015, the Court of Appeal denied the petition. The court reasoned

that the "only theory of first degree murder presented to the jury was that the shooting of [the victim] constituted felony murder in the commission or attempted commission of a robbery." (Lodg. 20, *citing* Court of Appeal opinion on direct review.) The *Chiu* opinion is inapplicable because "[a]n aider and abettor's liability for murder under the natural and probable consequences doctrine operates independently of the felony-murder rule." (Id., *citing Chiu*, 59 Cal. 4th at 166.)

On June 2, 2015, Escalante next constructively filed a petition for writ of habeas corpus in the California Supreme Court. (Lodg. 21.) He again raised the claim that his conviction must be reversed based on *Chiu*. (Id.) On September 16, 2015, the California Supreme Court summarily denied the petition. (Lodg. 22.)

### d. Escalante Files a Federal Petition for Writ of Habeas Corpus

On October 12, 2015, Escalante constructively filed the current federal Petition for Writ of Habeas Corpus. (Dkt. No. 1.) He asks this Court to deem his Petition "exempt" from AEDPA's time constraints because he is not at fault for any perceived procedural defaults in timely filing the Petition. (Id. at 1-2.) He asserts three grounds for relief: (1) the California Supreme Court erred in barring his application for relief from default to file a belated petition for review in violation of the Fourteenth Amendment; (2) there was insufficient evidence to support his conviction, and the trial court erred by denying his request for a new trial in violation of the Sixth and Fourteenth Amendments; and (3) the state court erred in instructing the jury that it could convict him under the natural and probable consequences doctrine in violation of the Fourteenth Amendment. (Id. at 9-11.) He requests the Court to conduct an evidentiary hearing to determine the merits, and to issue a writ of habeas corpus. (Id. at 3.)

Respondent filed a motion to dismiss the Petition on the ground that the petition is barred by the statute of limitations and should be dismissed with prejudice. (Dkt. No. 9.) Escalante did not file an opposition. The Court thereafter took the matter under submission on February 19, 2016.

/

## II. Discussion

### a. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one year statute of limitations period to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d); *see Smith v. Mahoney*, 611 F.3d 978, 993 (9th Cir. 2010) ("AEDPA imposes a one year statute of limitations on habeas petitions from the date the state judgment became final, not including time for post-conviction review.") The relevant section of the statute reads:

> (1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(d)(2).

### b. Commencement of the Statutory Period

Respondent contends the one-year period of limitation runs from the date on which the judgment became final. He contends no alternate later start date applies. In particular,

he asserts that no claim exists that the State created an impediment to filing the federal Petition; that no new federal constitutional right is involved that would provide for a later start date; and that no later start date is created based on the date on which the factual predicate of the claims presented could have been discovered through exercising due diligence. (Dkt. No. 9-1 at 13-15.) Escalante did not file an opposition and thus does not dispute Respondent's contentions.

The Court concludes that the latest start date is the date Escalante's judgment became final upon expiration of the time for him to seek such review under subsection-A, and that no later start date applies. Escalante does not raise any claim or assertion that the State created an impediment to filing the Petition, nor does there appear to be in the record any suggestion of such an impediment. Thus, no later start date under subsection-B would apply.

To the extent Escalante may rely on the California Supreme Court's decision in *People v. Chiu* to suggest it creates a newly recognized constitutional right by the Supreme Court and thus entitled him to a later start date under subsection-C, such a position would be unavailing. *Chiu* was a state supreme court decision that analyzed California state law, and the alternate start date under the AEDPA only applies to rights newly recognized by the United State Supreme Court that have been made retroactively applicable. *See Dodd v. United States*, 545 U.S. 353, 357 (2005).

Respondent also argues no later trigger date applies under subsection-D based on a factual predicate from Escalante's claim that the California Supreme Court should have permitted his belated petition for review due to his private counsel's inactions. (Dkt. No. 9-1 at 15.) Respondent contends Escalante's claim that his private counsel failed to act is more appropriately analyzed under equitable tolling principles instead of statutory tolling because such a claim "must satisfy a far higher bar than that for equitable tolling." (*Id., quoting Ramirez v. Yates*, 571 F.3d 993, 1000-01 (9th Cir. 2009). Having reviewed Escalante's claim that he should not be faulted due to his private counsel's inactions as to the belated petition for review, this Court agrees with Respondent that Escalante's

argument regarding his private counsel's inactions is not based a later start date, but rather is more appropriately analyzed under whether equitable tolling should apply.

Accordingly, the Court concludes the date Escalante's conviction became final is the appropriate trigger date for analyzing the one year period of limitation. The Court thus uses this date in its discussion below regarding whether statutory tolling applies to deem Escalante's Petition timely.

### c. Statutory Tolling

A petitioner's statute of limitations is tolled while a "properly filed" state habeas corpus petition is "pending" in the state court. 28 U.S.C. § 2244(d)(2). Generally, "the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge[,]" *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), so long as the petitioner did not unreasonably delay in seeking collateral relief. *Carey v. Saffold*, 536 U.S. 214, 225 (2002). Here, Escalante did not file a petition for review in the California Supreme Court, and so the appropriate start date is calculated from the date the Court of Appeal issued its opinion. *Smith v. Duncan*, 297 F.3d 809, 813 (9th Cir. 2002); *Gonzalez v. Thaler*, 132 S.Ct. 641, 646 (2012). The opinion was issued on April 9, 2003, and became final forty days later on May 19, 2003. *Id*. Escalante thus had one year from that date to timely file his federal Petition. Escalante filed his federal Petition on November 5, 2015, approximately 12 and a half years later. Thus, Escalante's Petition is untimely unless tolling applies.

No statutory tolling occurs from the date the judgment became final to the date the first state petition is filed. *Nino*, 183 F.3d at 1006 ("AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval."). Here, even if the date of Escalante's earliest state filing of February 16, 2012 is used to calculate the amount of potential tolling, nearly nine years passed from the date the judgment became final to that filing. Moreover, the Court agrees with Respondent that it is unclear whether Escalante's February 16, 2012 filing could even constitute an

application to seek post-conviction relief because that application only indicates Escalante sought the return of the case file, and Escalante did not file a state habeas petition until January 4, 2015. Moreover, Escalante's subsequent petition filings do not toll the limitations period once it had already run. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (state petition for post-conviction relief that is filed after AEDPA's one-year statute of limitations has expired does not reinitiate the limitations period). Accordingly, statutory tolling does not apply to deem Escalante's Petition timely.

### d. Equitable Tolling

AEDPA's statute of limitations is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling, the petitioner must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* at 649, *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez,* 571 F.3d at 997 (internal marks and citations omitted).

Equitable tolling is "'unavailable in most cases' … and is appropriate only 'if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (citations omitted). "[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." *Id.* (citations omitted).

Respondent contends equitable tolling does not apply to save Escalante's Petition from being deemed untimely. In support, Respondent argues that Escalante was not diligent in pursuing his rights from 2010 through 2012 because he did not file a petition for review, he did not hire another counsel, and he did not seek any other way to file a habeas petition. He also argues that Escalante was not diligent because the obligation to act diligently exists while an inmate is exhausting state court remedies. Respondent further argues that Escalante did not act diligently because he did not contact the State Bar about

his retained counsel until September 3, 2012. (Dkt. No. 9-1 at 18.)  Respondent also argues that Escalante was arguably not diligent from 2003 through 2012, and failed to show that his prior private counsel's lack of actions caused the approximate nine year delay before any state habeas corpus petition was filed.  (Dkt. No. 9-1 at 18-19.)

Though ordinary attorney negligence will not justify equitable tolling, the Ninth Circuit "has acknowledged that where an attorney's misconduct is sufficiently egregious, it may constitute an 'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of limitations." *Spitsyn v. Moore*, 345 F.3d 796, 800 (9th Cir. 2003), *citing Ford v. Hubbard*, 330 F.3d 1086, 1106 (9th Cir. 2003) ("there are instances in which an attorney's failure to take necessary steps to protect his client's interests is so egregious and atypical that the court may deem equitable tolling appropriate").  In *Spitsyn*, for example, the Ninth Circuit found that a retained attorney who failed to file a petition or return the trial record until two months after the limitations period had run, who had refused to respond to numerous requests from the petitioner and his mother regarding the petition, and who was disciplined for his actions by the bar, rose to the level of egregious behavior which justified equitable tolling.  *See also e.g., Gibbs v. Legrand*, 767 F.3d 879 (9th Cir. 2012) (holding that equitable tolling was appropriate where counsel abandoned client by assuring that counsel would inform petitioner when the limitations period began to run but failed to do so and ignored petitioner's diligent efforts to communicate with counsel).

Here, based on Escalante's pleadings and the record, it appears Escalante is entitled to equitable tolling from 2003 through 2010 due to his private counsel's egregious misconduct.  Escalante contends that from the date Escalante's conviction became final in the California Court of Appeal in 2003 until 2010, he relied on his privately retained attorney, Harrison, to file a petition for review, to investigate other potential claims and to pursue filing a collateral action.  (Dkt. No. 1 at 23-25, 28.)  He contends that he signed a retainer agreement with Harrison, that he and his family paid him $6,000, and yet Harrison never provided any of the services that were promised.  (Id. at 28.)  He contends Harrison was difficult to contact because he would often not return phone calls and would frequently

move around, and that the last contact he had with Harrison was sometime in 2010. (Lodg. 8.) Respondent does not dispute these assertions. (Dkt. No. 9-1at 17.)

Respondent alternatively argues that even if Harrison's actions constituted extraordinary circumstances, Escalante "fails to show the nexus between Harrison's inaction and the cause of his untimeliness." (Dkt. No. 9-1 at 19.) He argues that Petitioner failed to demonstrate he needed Harrison to exhaust his claims, as Petitioner could have obtained the court of appeal decision from the court and filed a petition for review himself. (Id.) The Ninth Circuit, however, has already considered and rejected this argument. *See Gibbs*, 767 F.3d at 887 (concluding that although it was "technically possible" for the petitioner to contact the state supreme court to ask the status of his state petition, he had no obligation or reason to do so because he was represented by counsel and his lawyer had promised to notify him of any decision). Likewise here, Escalante also had no obligation or reason to file his petition for review between 2003 and 2010 because during that time he believed Harrison was representing his rights.

Thus, the question boils down to whether Escalante exercised reasonable diligence in ultimately filing his petition after 2010 when he realized his retained counsel had essentially abandoned him. Respondent asserts Escalante was not diligent because he provides no explanation of what he did from 2010 through 2012. He contends that Escalante did not seek to contact the State Bar regarding Mr. Harrison until September 3, 2012, and further he took a detour by filing reductions in restitutions instead of being diligent in exhausting his claims in state court or attempting to file a federal habeas petition himself. (Dkt. No. 9-1 at 18.)

However, the record indicates that Escalante wrote a letter to the State Bar on October 30, 2011 seeking Harrison's contact information. (Lodg. 8, p.4.) Thus, some indication exists that he was attempting to be diligent in locating his counsel or determining the status of whether he should proceed on his own after he and his family last had contact with Harrison in 2010.

Nonetheless, even assuming arguendo that Escalante could establish he was diligently pursuing his rights from 2010 through 2012, the largely unexplained gap from 2012 until January 4, 2015 when he filed his habeas petition with the state supreme court indicates he was not diligent during this period of delay. In Escalante's declaration filed in support of his January 4, 2015 state habeas petition, Escalante stated the delay was due to being a pro se inmate, relying on his elderly parents, and not knowing how to research his claims or litigate them. (Dkt. No. 10-32 at 19.) An inmate's pro se status and lack of legal training, however, is not an extraordinary circumstance to justify tolling. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling). Indeed, Escalante's stated reasons of ignorance of the law and his incarcerated status do not distinguish him from the majority of inmates pursuing habeas corpus relief. *Bolanos v. Kirkland*, 2008 U.S. Dist. LEXIS 28042, 2008 WL 928252, at *4 (E.D. Cal. Apr. 4, 2008) ("If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these same problems in common.") As such, Escalante's reasons do not suffice to satisfy the requirements of demonstrating he was diligent in pursuing his rights and that some extraordinary circumstances stood in the way. An evidentiary hearing is unnecessary because Escalante has not alleged facts which, if true, would justify equitable tolling. *See Orthel v. Yates*, 795 F.3d 935, 940 (9th Cir. 2015) ("Further factual development may be required when a petitioner makes a good-faith allegation that tolling is warranted, depending on the sufficiency of the record that was before the district court."); *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) ("A habeas petitioner . . . should receive an evidentiary hearing when he makes a good faith allegation that would, if true, entitle him to equitable tolling.")

In sum, no indication of extraordinary circumstances exists to suggest they stood in Escalante's way of filing his habeas petitions, and the Court concludes Escalante was not

diligent in ultimately pursuing his rights.  Thus, there is not sufficient equitable tolling to deem Escalante's petition timely.

### e. Equitable Exception Based On An Actual Innocence Claim

Respondent cites to an exhibit in Escalante's petition where Escalante claims he is actually innocent.  Respondent contends that to the extent Escalante asserts he is actually innocent of the crimes for which he was convicted such that an equitable exception should apply, Escalante failed to present sufficient evidence of this claim to warrant tolling.  (Dkt. No. 9-1 at 19-23.)  Respondent argues that a petitioner asserting actual innocence as a basis for seeking an exception to AEDPA's limitations period must make a showing of evidence to warrant tolling, and Escalante has not done so.

The Ninth Circuit has held that the "actual innocence" gateway under *Schlup v. Delo* provides an exception to AEDPA's statute of limitations.  *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011).  Under this exception, even if a petitioner's claim is otherwise time barred, if the petitioner provides "new reliable evidence" of his actual innocence then the Court must consider all the evidence and make a determination about what reasonable, properly instructed jurors would do.  *Id.,* 653 F.3d at 937-38.  A petitioner is required "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 938, *quoting Schlup*, 513 U.S. at 324.  The petitioner must show that in light of the newly provided evidence it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *Lee*, 653 F.3d at 938.

Here, Escalante attached to his federal Petition a letter he wrote to the State Bar of California regarding Harrison.  (Dkt. No. 1 at 53-57.)  In that letter, Escalante wrote to the State Bar that he is innocent, that he is trying to preserve his actual innocence, and that he was a "victim of circumstance."  (Id.)  However, Escalante does not point to any new reliable evidence to consider in support of his claim of actual innocence, nor does the Court independently find such evidence contained in the Petition.  Accordingly, to the

extent Escalante asserts he is actually innocent and thus an equitable exception should apply to permit his Petition, he has failed to make a sufficient showing to demonstrate he would be entitled to such an exception.

### III. Conclusion

In sum, the Court concludes that neither statutory tolling nor sufficient equitable tolling applies to deem Escalante's Petition timely, and Escalante has also not provided support for an equitable exception to hear the Petition based on an actual innocence claim. Escalante's federal Petition is therefore untimely and must be dismissed. For all the foregoing reasons, **IT IS RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **GRANTING** Respondent's Motion to Dismiss; and (3) **DISMISSING** the Petition with prejudice.

**IT IS ORDERED:**

No later than **June 16, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections must be filed with the Court and served on all parties no later than **June 30, 2016**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: June 2, 2016

/s/ Nita L. Stormes
Hon. Nita L. Stormes
United States Magistrate Judge